Danny Wayne MILLER,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 89–16091.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1990.

Submission Deferred April 16, 1991.

Resubmitted Sept. 27, 1991.

Decided Oct. 3, 1991.

Raymond P. Lee, Hofman, Salcito, Stevens & Myers, Phoenix, Ariz., for plaintiff-appellant.

Richard G. Patrick, Asst. U.S. Atty., Phoenix, Ariz., for defendant-appellee.

Before TANG, FLETCHER and REINHARDT, Circuit Judges.

PER CURIAM:

Appellant Danny Wayne Miller appeals from the district court's grant of summary judgment in favor of the defendant, United States, in an action pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346 and 2671 *et seq.* In opposition to the United States motion for summary judgment, Miller argued, *inter alia*, that a genuine issue of material fact exists as to the duty of care the government owed him. He presented evidence that although the government possessed actual knowledge of the dangerous condition that caused his injuries, it failed to post any warnings or provide any safeguards. Miller asserted that this knowledge constitutes "wilful or malicious failure" under Arizona law. The district court concluded that no reasonable juror could find that the defendant employees' conduct amounted to "wilfulness" or "malice" within the meaning of the Arizona Recreational User Act, Arizona Revised Statutes (A.R.S.) § 33–1551. 723 F.Supp. 1354 (D.Ariz.1988). We reverse.

## I.

On November 3, 1984, Danny Miller, age 17, went on a family outing to the Prescott National Forest, located in Yavapai County, Arizona. The Miller family entered the Forest through a gate with a United States Forest Service sign attached that read "please close the gate." The U.S. Forest Service, which had and continues to have jurisdiction over the Prescott National Forest, permitted use of this area for recreational purposes and was aware that recreational users, such as the Miller family, frequented the area.

After lunch, Miller decided to take his motorcycle "for one last ride" down a roadway directly connected to a staging area where earlier the family had unloaded their belongings. This roadway was Old Highway 279. While riding upon Old Highway 279, Miller was propelled toward an embankment of a dry wash bed, as the road beneath him suddenly disappeared. The road had at one time crossed a wash; its surface had rested on top of a metal culvert. Unknown to Miller, the culvert had been removed, and the road surface was no longer in existence. Instead, there was only a large, gaping area—the wash. There were no warning signs, barricades, or other notices of the danger on Old Highway 279, or in or around the wash—the area where the road surface no longer existed—to alert drivers to the hazard, or to prevent them from encountering, the dangerous condition. Totally unaware of the danger, Miller rode down the road and landed in the wash area over which the road had once crossed. Miller crushed his ankle in the accident and as a result suffered severe and permanent impairment of his mobility. At the time of his accident, Yavapai County held the roadway easement with respect to Old Highway 279. However, the United States, through the Department of Agriculture and the Forest Service, owned the land under and surrounding the roadway easement, including the wash.[1]

## II.

■ We review *de novo* the district court's grant of summary judgment. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir. 1986). Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* We construe the term "wilful or malicious failure to guard or warm" under the Arizona

---

1. Old Highway 279 was abandoned by the State of Arizona in 1964. Pursuant to Arizona Revised Statute § 18–502(4) [presently codified under A.R.S. § 28–1902 subd. 5], that abandonment transferred the state's interest in the road-

way to Yavapai County. Following Miller's accident, Yavapai County abandoned its interests in the roadway to the United States, pursuant to A.R.S. §§ 18–201 and 28–1902 subd. 3.

Recreational Use Statute, as we believe the Arizona Supreme Court would. *See McMurray v. United States*, 918 F.2d 834 (9th Cir.1990).

## III.

The Federal Tort Claims Act confers jurisdiction upon federal district courts for claims against the United States for money damages under the following circumstances:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). As the terms of the Act expressly provide, the substantive law of the place where the allegedly negligent act or omission occurred governs suits brought against the United States under the FTCA. Because Miller's injuries occurred in the State of Arizona, we must look to that State's law in evaluating his claim. *Id.*

Subsection (A) of A.R.S. § 33–1551, the Arizona Recreational User Statute, provides that an owner, lessee or occupant of premises does not:

> 1. Owe any duty to a recreational user to keep the premises safe for such use.

> 2. Extend any assurance to a recreational user through the act of giving permission to enter the premises that the premises are safe for such use.

> 3. Incur liability for an injury to persons or property caused by any act of a recreational user.

. . . . .

> [However,] [t]his section does not limit the liability which otherwise exists for maintaining an attractive nuisance, or for wilful or malicious failure to guard or warn against a dangerous condition, use or activity.

Thus, the statute immunizes landowners from liability unless they have maintained an attractive nuisance or have wilfully or maliciously failed to warn or guard against a dangerous condition. At issue in this appeal is whether the United States Forest Service employees' alleged acts or omissions fall within the "wilful or malicious failure to guard or warn" exception of the statute.

The United States, for summary judgment purposes, admitted that its employees (1) knew of the removal of the culvert on Old Highway 279 at the site of Miller's accident, (2) knew that the roadway was used by off-road vehicles, (3) knew that the absence of the culvert presented a dangerous condition to recreational users of the roadway, and (4) failed to warn or guard against this dangerous condition. The government contends that these admitted facts establish simple negligence not wilful or malicious failure.[2] We disagree.

2. The appellant contends that a factual dispute exists regarding whether agents of the United States removed the culvert that supported Old Highway 279. In a footnote, the district court suggested that appellant might have waived this argument. The court observed, "[P]laintiff apparently no longer contends that defendant's agents affirmatively created the hazard by removing the culvert. While this was raised by plaintiff in his original response to defendant's motion, this issue is not addressed by the supplemental statement of facts filed with the court." Order, June 19, 1989, at 5 n. 1.

Appellant's failure to contend in his supplemental statement that the United States Forest Service agents removed the culvert does not amount to a waiver of that argument for purposes of summary judgment. We must look not to a single pleading, but to the entire record to determine whether there are any factual disputes. *See, e.g., Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987) (stating that the record made on summary judgment controls the inquiry whether any genuine issue of triable fact exists.); *Scoggins v. The Boeing Co., Inc.,* 742 F.2d 1225 (9th Cir.1984) (a careful review of the record reveals that "Scoggins failed to make the reactivation argument to the District Court.") As the district court noted, Miller raised this argument in his original response to defendant's motion for summary judgment. We find this sufficient to maintain the argument for summary judgment purposes. Moreover, we find, based upon the record, that appellant presented sufficient evidence to raise a genuine issue of material fact as to whether

■ In *Southern Pacific Transportation Co. v. Lueck*, 111 Ariz. 560, 535 P.2d 599 (1975), the Arizona Supreme Court defined wilful misconduct as "intentional, wrongful conduct, done either with knowledge that serious injury to another probably will result or with a wanton and reckless disregard of the possible results...." *Lueck*, 535 P.2d at 602. Arizona courts have not directly defined the term "wilful" as it is used in the Recreational User Statute. However, since the recreational use statute is in derogation of the common law, we construe it strictly and "take care to avoid an overbroad interpretation ... that would afford immunity that was not intended." *Ducey v. United States*, 713 F.2d 504, 510 (9th Cir.1983). The Arizona Court of Appeals recently concluded that the recreational user's statute is in derogation of the common law and therefore must be strictly construed. *Walker v. City of Scottsdale*, 163 Ariz. 206, 786 P.2d 1057, 1062 (Ariz.App.1989), *review denied*, 163 Ariz. 206, 786 P.2d 1057 (Ariz.1990). Absent any convincing evidence that the Arizona legislature intended to define the term differently than its common law meaning, we conclude, as did the district court, that the definition set forth in *Lueck* applies in this context also.

■ In cases in which wilfulness is an issue, "summary judgment should be granted with caution, since questions such as intent or motive are presented." *Simpson v. United States*, 652 F.2d 831, 834 (9th Cir.1981) (citing *Gard v. United States*, 594 F.2d 1230, 1234 n. 2 (9th Cir.), *cert. denied*, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1976)). As the Arizona Supreme Court stated in *Lueck*, the question of wilful conduct is "essentially a question of fact." *Lueck*, 535 P.2d at 602.[3]

Here, the facts, which are undisputed for purposes of summary judgment, would, if true, justify the conclusion that the government's failure to warn was wilful—i.e. made with reckless disregard for the possible result. The undisputed facts are that the Forest Service was aware of the washed-out portions of Old Highway 279, knew that people used the area for recreational purposes, and believed that the wash-outs posed a significant hazard to recreational users. Notwithstanding these "facts," the Forest Service did not post a warning of any kind to alert users of the roadway to the dangerous condition caused by removal of the culvert. Nor did it take any other action to protect recreational users from the dangerous condition. These "facts," all of which are admitted as true by the government for summary judgment purposes, are sufficient at the very least to raise a genuine issue of material fact, precluding summary judgment.

The government contends that Arizona courts have refused to find defendants conduct wilful or wanton under facts similar to this case. It cites *Kemp v. Pinal County*, 13 Ariz.App. 121, 474 P.2d 840 (1970) and *Webster v. Culbertson*, 158 Ariz. 159, 761 P.2d 1063 (1988) as the two principal cases in support of this contention. Both cases are clearly distinguishable. In *Kemp*, the Arizona Court of Appeals held that the trial court properly refused to give the jury a gross or wanton negligence instruction where the county failed to erect signs warning of the existence of an intersection. The plaintiff in *Kemp* proffered no evidence that the county knew of the dangerous condition. The court of appeals noted

---

the culvert was removed by agents of the United States.

**3.** The government asserts that the district court erred in rejecting the definition of "wilful and malicious" as those terms are set forth in *Linthicum v. Nationwide Life Insurance Co.*, 150 Ariz. 326, 723 P.2d 675 (1986). The government's assertion lacks merit. In determining the mental state necessary to justify an award of punitive damages, the *Linthicum* court held that the conduct must not only be wilful and malicious, but it "must also be aggravated and outrageous."

*Id.* 723 P.2d at 680. The district court correctly concluded that the definition of wilful and malicious set forth in *Linthicum* pertains to the propriety of awarding punitive damages. It does not purport to define the term as it is used to establish either common law or statutory liability for general damages. Nor does *Linthicum* expressly or implicitly reject the definition set forth in *Lueck*. Accordingly, we conclude that the district court was correct in refusing to apply the *Linthicum* definition of wilful and malicious in the context of the recreational user's statute.

that "[t]he intersection had recently been paved ... and no previous accidents had occurred at this intersection since its improvement." *Id.* 474 P.2d at 844. The appellate court also observed that the plaintiff based her contention on an experiment conducted by her expert witness. The court therefore concluded that the evidence of negligence did not rise to the level of gross or wanton negligence. Conversely, here Miller alleges that the United States created and was fully aware of the dangerous condition, and the second part of appellant's allegation is admitted to be true—at least for present purposes. *Webster* involved an injured adult trespasser who, while riding a horse, ran into a fence of unmarked barb wire that the defendant strung across the wash at her property line. The Arizona Supreme Court concluded in a summary paragraph that "there is insufficient evidence to support a finding that the defendant was guilty of 'willful or wanton' conduct *as those terms are used in assessing duties toward trespassers.*" *Webster,* 761 P.2d at 1067 (emphasis added). The court expressly limited its definition of willful or wanton to cases in which the plaintiff trespassed upon the defendant's property.[4] Accordingly, we find *Webster* inapposite to cases in which the plaintiff is considered an invitee or recreational user.

■ The United States also argues that since Yavapai County held the roadway easement with respect to Old Highway 279 at the time of the accident, the United States had no duty to post warning signs or maintain the road in a condition reasonably safe for ordinary vehicular use. Although Yavapai County held the easement and had jurisdiction over the roadway at the time of the accident, Miller introduced evidence that the United States, as owner of the land under and surrounding the roadway, exercised some control over the roadway by removing the culvert that at one time spanned the wash and by "patrol-

ling" the general area. This question, as we have noted, is a matter of dispute between the parties that is not susceptible to resolution on summary judgment.

■ Equally important, it is undisputed that the United States owns the wash area into which appellant crashed. The roadway did not exist in the area in which Miller crashed; there was only land owned by and under the jurisdiction of the United States. A genuine issue exists as to whether the Forest Service wilfully or maliciously failed to post any warnings around the wash or otherwise guard against the dangerous condition caused by the abrupt ending of the roadway and the sudden emergence of the wash.

The United States cites several cases to support its assertion that because Yavapai County had statutory control and maintenance responsibility for the roadway easement, the United States "had no duty upon which actionable negligence can be found." Each of the cases cited by appellee for this proposition, however, rests its conclusion not simply on the fact that the United States did not have ownership or jurisdiction over the sites in question, but on the fact that the United States did not assume *any* responsibility for the sites. For example, in *Town of Oro Valley v. Superior Court,* 150 Ariz. 48, 721 P.2d 1175, 1177, (1986) the Arizona Court of Appeals observed that the town of Oro Valley "did not assume any responsibility for the location or maintenance of the intersection in question." *Town of Oro Valley,* 721 P.2d at 1177. Accordingly, the appellate court determined that the intersection was in fact outside of the town's jurisdiction and therefore concluded the town owed no duty to the injured plaintiff. *Id.* Similarly, in *Borquez v. United States,* 773 F.2d 1050 (9th Cir.1985), we noted that the United States, in delegating its rights to the Salt River Valley Water Users Association, "did not reserve to the government any ultimate

---

**4.** In the principal portion of its opinion, the Arizona Supreme Court concluded that summary judgment for the defendant was inappropriate because the plaintiff had a viable claim under § 337 of the Restatement of Torts, which imposes liability on a landowner who maintains artificial conditions highly dangerous to known trespassers.

duties over care, operation and maintenance" of a diversion dam and therefore could not be subjected to a lawsuit concerning a failure to erect barricades or post warnings around the dam. *Id.* at 1052.

Conversely, in the case we decide today, Miller introduced testimony to support his assertion that the United States Forest Service *in fact* exercised jurisdiction over the roadway easement by removing the metal culvert. This factual question must be resolved by a trier of fact, not a court on a motion for summary judgment. Equally important, as we have noted above, none of the cases cited by the appellee addresses the situation in which the United States actually owns and has complete jurisdiction and control over the location at which the plaintiff suffered his injuries—i.e., the wash. Here, this distinction is important, in view of appellant's claim that the United States wilfully or maliciously failed to safeguard recreational users from the dangerous condition created by the existence of the wash area. With the removal of the roadway surface, the wash itself became a hazard. Appellant raises a factual issue, at the very least, as to whether the United States' failure to post warnings or erect barricades in or around the wash area constituted "wanton and reckless disregard."

The judgment of the district court is reversed. The case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.