**Jerome W. WRINGER, Individually and as Personal Representative of the Estate of Raymond Russell Wringer, et al., Plaintiffs,**

v.

**The UNITED STATES of America, et al., Defendants.**

**No. CIV 91–181 PCT PGR.**

United States District Court, D. Arizona.

March 18, 1992.

W. Ronald Jennings, Jerry L. Stahnke, Porter, Stahnke & Jennings, P.A., Mesa, Ariz., for plaintiffs.

James C. Hair, Jr., Asst. U.S. Atty., Phoenix, Ariz., for defendants.

## ORDER

ROSENBLATT, District Judge.

This action arises from events surrounding the death of Raymond Russell Wringer at Lynx Lake, which is in the Prescott National Forest near Prescott, Arizona. The Plaintiffs contend that representatives of the United States government failed to protect Raymond Wringer from thin ice on the lake because they failed to post signs warning visitors of the thin ice and failed to close the lake.

■ The United States filed a motion for summary judgment on October 30, 1991. In the motion, the United States contends that A.R.S. § 33–1551 bars the Plaintiffs' claims in this case. The Plaintiffs contend that § 33–1551 does not apply. They further contend that the government representatives acted wilfully, thus subjecting the United States to liability under the wilfulness exception to the statute.[1]

---

1. On November 26, 1991, the Plaintiffs filed a motion seeking leave to amend their complaint in order to conform to the evidence presented regarding the "wilful ... failure to guard or warn against a dangerous condition" exception of A.R.S. § 33–1551(C). The United States has not opposed the motion and the Court finds that it should be granted pursuant to Fed.R.Civ.P. 15(b).

## FACTS

The following material facts are undisputed:

The Plaintiffs' decedent, Raymond Wringer, was sightseeing when he visited Lynx Lake on January 21, 1989. Wringer was not charged a fee for use of the lake premises. When Raymond Wringer arrived at the lake, part of the lake's surface was frozen over. Wringer walked out onto the ice with his friend, Jeffrey Anders. When Wringer and Anders reached a point approximately 50 to 75 feet from shore, the ice beneath them broke, and both Wringer and Anders fell into the water. Anders eventually pulled himself out of the water. Wringer was not so fortunate. As Anders and others gathered items with which to rescue him, Wringer went under the water and eventually drowned.

No signs warning of the danger of walking on thin ice were present at Lynx Lake on January 21, 1989. A person drowned while running on thin ice, despite repeated warnings, on January 5, 1988. The District Ranger responsible for Lynx Lake, John Holt, considered whether to post warning signs after the January 5, 1988 drowning. After discussing the matter with others, Holt concluded that such signs were unnecessary because the hazard was obvious, because signs would degrade the quality of the scenery around the lake, and because signs would be expensive to maintain due to vandalism.

The Plaintiffs exhausted their administrative remedies by filing the appropriate administrative claims with the United States Department of Agriculture. The Department of Agriculture denied the Plaintiffs' claims on August 6, 1990.

## DISCUSSION

■ The parties agree that this Court must apply Arizona law in determining whether the United States is liable to the Plaintiffs. *Richards v. United States,* 369 U.S. 1, 8–10, 82 S.Ct. 585, 590–91, 7 L.Ed.2d 492 (1962). The parties also agree that to recover under Arizona law, the Plaintiffs must prove (1) that the United States had a legal duty to conform to a standard of conduct recognized by Arizona law for the protection of others against unreasonable risks; (2) that the United States failed to conform to the required standard; (3) that the United States' conduct proximately caused the Plaintiffs' injuries; and (4) that the Plaintiffs suffered actual injury. *Ontiveros v. Borak,* 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983). The parties further agree that the question of whether the United States owed Wringer a duty is a question this Court must resolve as a matter of law. *Markowitz v. Arizona Parks Bd.,* 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985). A.R.S. § 33–1551 states, in pertinent part:

A. An owner, lessee or occupant of premises does not:

1. Owe any duty to a recreational user to keep the premises safe for such use.

. . . .

B. As used in this section:

1. "Premises" means ... forest lands, and any other similar lands which by agreement are made available to a recreational user, and any building or structure on such lands.

2. "Recreational user" means a person to whom permission has been granted or implied without the payment of an admission fee or other consideration to enter upon premises to hunt, fish, trap, camp, hike, ride, swim or engage in similar recreational pursuits....

C. This section does not limit the liability which otherwise exists ... for wilful or malicious failure to guard or warn against a dangerous condition, use or activity.

■ The Court finds that A.R.S. § 33–1551 controls the outcome in this case. The Plaintiffs attempt to distinguish Wringer's purposes of "shopping and sightseeing" from recreation in the form of hiking, motorcycle riding, and other activities.[2]

---

**2.** In attempting to distinguish § 13–1551, the Plaintiffs stated:

The statute, however, does not apply to this case. The defendant in its motion cites *Miller*

The distinction is without consequence. Wringer's acts of walking around the dock area of Lynx Lake and out onto the ice easily fall within the plain meaning of "recreational pursuits." Indeed, the Court would not be stretching the definition of "hiking" to include walking out onto the ice.

 Thus, the United States can be liable to the Plaintiffs only if a reasonable juror could conclude that the United States acted wilfully or maliciously in failing to post warning signs or close the lake. A.R.S. § 33–1551(C); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Because the recreational user statute derogates Arizona common law, this Court must "construe it strictly and 'take care to avoid an overbroad interpretation ... that would afford immunity that was not intended.'" *Miller v. United States*, 945 F.2d 1464, 1467 (9th Cir.1991) (omission in original) (quoting *Ducey v. United States*, 713 F.2d 504, 510 (9th Cir.1983). Because no convincing evidence shows the Arizona legislature intended to give different meaning to "wilful misconduct" from that term's common law meaning, the definition of "wilful misconduct" set forth in *Southern Pacific Transportation v. Lueck*, 111 Ariz. 560, 535 P.2d 599 (1975), applies in this case. *Miller*, 945 F.2d at 1467. In *Lueck*, the Arizona Supreme Court defined "wilful misconduct" as "intentional, wrongful conduct, done either with knowledge that serious injury to another probably will result or with a wanton and reckless disregard of the possible results." *Lueck*, 111 Ariz. at 563, 535 P.2d at 602.

 The Plaintiffs contend that the government's failure to post signs after someone drowned the previous year is suf-ficient evidence to support an inference of wilfulness. Indeed, their position finds some support in the language of *Miller:*[3]

> In cases in which wilfulness is an issue, "summary judgment should be granted with caution, since questions such as intent or motive are presented".... As the Arizona Supreme Court stated in *Lueck*, the question of wilful conduct is "essentially a question of fact."

*Miller*, 945 F.2d at 1467 (citations omitted). The court in *Miller* went on to note the facts "would, if true, justify the conclusion that the government's failure to warn was wilful—i.e. made with reckless disregard for the possible result." Among the facts undisputed for the purpose of summary judgment in *Miller* were the government's knowledge of washed-out portions of a highway, including one caused by a missing culvert, and its belief "that the wash-outs posed a significant hazard to recreational users." *Id.*

Notwithstanding *Miller*, the facts in this case do not support a reasonable inference of wilfulness on the part of the government officials. The Plaintiffs have not provided any evidence to show that the government knew "serious injury to another probably [would] result" or acted with wanton or reckless disregard to the possible results.

The only fact the Plaintiffs offer to suggest that the government may have acted with the requisite culpability is the single previous drowning resulting from a fall through the ice. The circumstances of that drowning, however, do not support an inference that the government knew serious injury to another probably would result. The previous drowning occurred after a person ran across the ice despite repeated

*v. United States*, 723 F.Supp. 1354 (D.Ariz. 1988), reversed on other grounds, No. 89–16091 [945 F.2d 1464] (9th Cir.1991), for the proposition that the statute applies. However, that case is factually distinguishable from our case. In *Miller* a 17 year old went to the Prescott National Forest on a family outing. It was their intention to *recreate* by riding dirt bikes in the national forest. In our case, Wringer and Anders went to Prescott for the purpose of shopping and sightseeing.

Plaintiffs' Response at 3.

**3.** The Plaintiffs also cite *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 706 P.2d 364 (1985), in support of their contentions regarding the United States' duty toward Wringer. *Markowitz*, a negligence case involving an incident that occurred in 1975, is inapposite to this case because Arizona enacted the recreation statute in 1983.

**214**

warnings. When District Ranger John Holt learned of the previous incident, he discussed with his staff the issue of whether to post warning signs. Holt concluded that the hazard of running on the ice was obvious and that warning signs were therefore unnecessary. The Plaintiffs have not pointed to any facts that would support an inference that Holt's conclusion was unreasonable, especially in light of the fact that the previous drowning victim ignored repeated warnings.

In addition, *Miller* is distinguishable because the dangerous condition in that case was a removed culvert—an unforeseeable artificial condition on the land. Moreover, the Plaintiffs in *Miller* contended that government agents had removed the culvert and created the artificial condition. *Miller*, 945 F.2d at 1466 n. 2. In this case, the ice was an obvious, natural condition on the lake. Holt's knowledge of the previous drowning cannot be equated with the government's undisputed belief in *Miller* "that the wash-outs posed a significant hazard to recreational users." *Id.* at 1467. Viewing the facts in a light most favorable to the Plaintiffs, the Court finds that the only reasonable inference from Holt's conclusion is that he believed the ice did not pose a significant hazard because the condition was obvious. Again viewing the facts in a light most favorable to the Plaintiffs, the Court finds that no reasonable juror could conclude that Holt's conclusion was wilful or malicious.

Because the Plaintiffs have not offered sufficient evidence to support a reasonable inference that the government acted wilfully or maliciously within the meaning of A.R.S. § 33–1551, they cannot prove an essential element of their case. Thus, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Therefore,

IT IS ORDERED that the United States' Motion for Summary Judgment (doc. # 8) is granted and that the Clerk of the Court shall enter judgment accordingly.

IT IS FURTHER ORDERED that the Plaintiffs' Motion to Amend Complaint (doc. # 11) is granted.