5 F.3d 538
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Trig NEAL, Plaintiff-Appellant,
v.
BENTLY NEVADA CORP., Defendant-Appellee.
 No. 91-16291.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 12, 1993.
Decided Sept. 13, 1993.
 
 Appeal from the United States District Court for the District of Nevada, No. CV-89-00779-ECR; Edward C. Reed, Jr., District Judge, Presiding.
 D.Nev., 771 F.Supp. 1068.
 AFFIRMED.
 Before: PREGERSON, BOOCHEVER, and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Trig Neal appeals from a grant of summary judgment for defendant Bently Nevada Corporation ("Bently"). Neal was injured when he dove into shallow water from a rope swing located on Bently's property. Bently invoked Nevada's "recreational use statute," which precludes landowner liability except for "willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity...." On defendant's motion for summary judgment, the district court found that plaintiff failed to produce evidence to support a finding of "willfulness," and granted judgment for defendant.
 
 
 3
 * On August 1, 1987, Trig Neal dove into a shallow part of the Carson River from a rope swing. On impact, he sustained permanent disabling injuries.
 
 
 4
 The rope swing was fixed to a tree on a 520-acre plot of undeveloped land owned by Bently. Bently has never used this parcel for any purpose. Neal did not give Bently consideration for the use of the land, nor did he obtain Bently's permission before entering the property.
 
 
 5
 Neal filed this diversity action in the district court, alleging that Bently "negligently, consciously, and recklessly controlled" its land by allowing a rubber hose to be tied to a tree next to the Carson River. He also alleged that this conduct constituted "a willful and malicious[1] failure to guard or warn against a known dangerous condition, use and activity."
 
 
 6
 In its answer, Bently invoked Nevada's "Recreational Use Statute" as an affirmative defense. See Nev.Rev.Stat. (NRS) Sec. 41.510. In effect, this statute precludes landowner liability to recreational users of real property except for "willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity...." Plaintiff does not contest the applicability of NRS Sec. 41.510 to this case.
 
 
 7
 Bently subsequently moved for summary judgment. Bently argued plaintiff could not establish that Bently's failure to warn or guard against any dangerous use or activity was "willful or malicious." The district court agreed, and granted judgment for Bently.
 
 II
 
 8
 We review a grant of summary judgment de novo. Miller v. United States, 945 F.2d 1464, 1465 (9th Cir.1991). Viewing the evidence in the light most favorable to the non-moving party, we determine whether there are any genuine issues of material fact. Id.
 
 III
 
 9
 Nevada's "Recreational Use Statute" provides in relevant part:
 
 
 10
 1. An owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others for crossing over to public land, hunting, fishing, trapping, camping, hiking, sightseeing, or for any other recreational purposes, or to give warning of any hazardous condition, activity or use of any structure on the premises to persons entering for those purposes, except as provided in subsection 3.
 
 
 11
 NRS Sec. 41.510(1) (1986). Subsection 3, in turn, provides:
 
 
 12
 3. This section does not limit the liability which would otherwise exist for: (a) Willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity....
 
 
 13
 NRS Sec. 41.510(3) (1986). The purpose of the statute is to "encourage owners of land within rural areas to make land and water areas available for recreational purposes by limiting their liability towards persons entering thereon for such purposes." Ducey v. United States, 523 F.Supp. 225, 229-30 (D.Nev.1981), aff'd in part, rev'd in part on other grounds, 713 F.2d 504 (9th Cir.1983).
 
 
 14
 Under Nevada law, "[w]illful or wanton misconduct is intentional wrongful conduct, done either with knowledge that serious injury will probably result, or with a wanton or reckless disregard of the possible results." McMurray v. United States, 918 F.2d 834, 837 (9th Cir.1990), quoting Davies v. Butler, 602 P.2d 605, 609 (Nev.1979).[2]
 
 
 15
 Three essential elements must be present before a negligent act becomes willful misconduct: "(1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to possible, result of the danger, and (3) conscious failure to act to avoid the peril." Rost v. United States, 803 F.2d 448, 451 (9th Cir.1986) (reviewing application of California's recreational use statute, on which the Nevada statute is based).
 
 
 16
 The district court concluded that a "reasonable jury could find that a reasonable person in defendant's shoes had constructive knowledge that rope swinging on its property existed." Order at 11. The district court held that plaintiff had "not ... presented the court with any facts relevant to whether a reasonable jury could find that the defendant had constructive knowledge that the Carson River's water level could be shallow at the site or that the conditions at the site made rope swinging there dangerous for another reason, such that injury was probable." Order at 12 (emphasis added).
 
 
 17
 On appeal, plaintiff contends that the following evidentiary materials together would support a finding in his favor on this issue:
 
 
 18
 1. Deposition testimony of Trig Neal that he waded across the river to access the rope swing site;
 
 
 19
 2. Deposition testimony of Bently employee George Goodspeed that he walked across the river with a chain saw to remove the limb from which the rope swing hung;
 
 
 20
 3. Affidavits of local residents testifying to rope swing activity on "numerous occasions" since the year 1957;
 
 
 21
 4. Deposition testimony of Donald Bently, CEO of Bently Nevada Corporation, recognizing that diving into shallow water from a rope swing by teenagers is a hazardous activity; and an
 
 
 22
 5. Affidavit by George Lawniczak, Jr., Ph.D, that each year an estimated 2,000 to 3,000 persons incur traumatic spinal cord injury as a result of diving into water that is too shallow, that diving is the third leading cause of traumatic spinal cord injury for males and accounts for two-thirds of all sports-related quadriplegia, and that he inspected the injury site and found that "[w]ater depths were variable as would be expected where a natural body of water is involved."
 
 
 23
 This evidence does not raise a genuine issue of material fact that the defendant willfully failed to guard or warn against a dangerous condition at the site of the accident. First, Neal's testimony establishes that the river actually was shallow (at least in spots near the site of the accident--the only evidence in the record was that the river was about 10 feet deep at the site when Neal made an earlier jump) but not that the defendant had constructive knowledge of the river depth. Second, Goodspeed's testimony has no bearing on whether Bently had constructive knowledge of the peril prior to the accident.
 
 
 24
 Affidavits that rope swing diving took place at the site for approximately 30 years are not relevant to determine whether Bently should have known that rope swing diving was dangerous at the site and would lead to probable injury. In fact, this evidence tends to contradict the proposition that rope swinging at that site was "probabl[e]" to cause serious injury. It is not controverted that Bently "has never received any complaints regarding this parcel," and that no "Bently officer ... was aware of ... any previous accidents." Order at 4.
 
 
 25
 In his deposition, Donald Bently, Bently's CEO, "recognize[d] that shallow-water diving from a rope swing by teenagers is a hazardous activity." This general statement fails to establish that Bently, through its agent, knew that the river was shallow at the site of the accident.
 
 
 26
 Lastly, Dr. Lawniczak testified that each year an estimated 2,000 to 3,000 persons incur traumatic spinal cord injury as a result of diving into water that is too shallow and that diving is the third leading cause of traumatic spinal cord injury for males and accounts for two-thirds of all sports-related quadriplegia. While indicating generally that diving in shallow water is extremely dangerous, the evidence does not tend to prove that Bently should have known that injury is a "probabl[e] result," McMurray, 918 F.2d at 837, of diving into the Carson River at that site.
 
 
 27
 Dr. Lawniczak also averred that he inspected the injury site and found that "[w]ater depths were variable as would be expected where a natural body of water is involved." The blank statement that people generally know that natural bodies of water vary in depth does not tend to prove the water was shallow at that site. Essentially, plaintiff would have us extrapolate from two bare facts--that the defendant had constructive knowledge there was a rope swing on its property, and that rivers have variable depths and could potentially be shallow--to the conclusion that the defendant should have known that serious injury was a probable result of plaintiff's diving into the river at that spot. We decline to draw that conclusion. Cf. Charpentier v. Von Gelden, 236 Cal.Rptr. 233 (Cal.App.1987) (in case involving injury to swimmer, court granted summary judgment on willfulness issue for landowner under California recreational use statute).
 
 IV
 
 28
 It is tragic that this young man suffered such serious injury in this accident. In enacting the recreational use statute, however, the Nevada legislature chose to encourage landowners to keep their property accessible to recreational users by giving landowners who allow their property to be used by others the benefit of a higher liability standard. The trade-off for this choice is that some litigants seeking compensation for injuries may not be able to meet their burden of introducing evidence raising a genuine issue whether a landowner acted "willfully or maliciously."
 
 
 29
 The evidence submitted by Neal in opposition to Bently's motion for summary judgment does not raise a genuine issue of material fact as to whether Bently willfully failed to warn or guard against the hazards of rope swing diving at the site. The district court properly entered summary judgment for Bently. The district court is AFFIRMED.
 
 PREGERSON, Circuit Judge, dissenting:
 
 30
 Neal's evidence shows that: (1) a Bently officer had actual knowledge that shallow water diving is a hazardous activity; (2) reasonable people should know that shallow water diving frequently results in severe and often fatal injuries; (3) reasonable people should know that the Carson River has variable water depths, including shallow areas; and (4) Bently had constructive knowledge that rope swing diving actually occurred on Bently property. Together this evidence is sufficient to support a jury finding that Bently had constructive knowledge that rope swing diving into the Carson River was occurring, and that this activity probably would lead to injury.
 
 
 31
 Therefore, I dissent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Neal does not appeal the district court's holding that Neal did "not set forth facts from which malice can be inferred." Order at 8
 
 
 [2]
 Later pronouncements by the Nevada Supreme Court, though cited in McMurray with an "accord" cite, 918 F.2d at 837, may impose a slightly stricter standard for establishing willfulness. See Bell v. Alpha Tau Omega Fraternity, 642 P.2d 161, 162 (Nev.1982) ("Willful misconduct requires a consciousness that one's conduct will very probably result in injury."); Van Cleave v. Kietz-Mill Minit Mart, 633 F.2d 1220, 1221 (Nev.1981) (willful misconduct is conduct "that the actor knows or should know, will very probably cause harm"). The standard applied is not dispositive in this case