761 P.2d 1063

**Joe WEBSTER, Plaintiff/Appellant,**

v.

**Diane CULBERTSON and Rebecca Klug, Defendants/Appellees.**

**No. CV–87–0051–PR.**

Supreme Court of Arizona, En Banc.

Sept. 13, 1988.

Glicksman & Awerkamp, P.C. by Elliot A. Glicksman, Tucson, for appellant.

Shannon & Cronin by Robert S. Cronin, Jr. and Richard Shannon, Phoenix, for appellees.

MOELLER, Justice.

## JURISDICTION

Plaintiff Joe Webster was severely injured in 1984 while riding his horse on the defendant-landowner's property.[1] He ran into a fence of unmarked barb wire which defendant had strung across the wash at her property line. Plaintiff sued for personal injuries, and the defendant defended on the ground that plaintiff was a trespasser to whom she owed only the duty of refraining from willful or wanton injury.

In the trial court, the defendant moved for summary judgment. In response, plaintiff claimed that there was sufficient evidence of willful or wanton injury to defeat the motion but that, in any event, § 335 of the Restatement (Second) of Torts (hereafter Restatement) entitled "Artificial Conditions Highly Dangerous to Constant Trespassers on Limited Area" applied. The trial court granted summary judgment, ruling that § 335 did not apply, and that the evidence was insufficient to support a finding of willful or wanton injury. On motion for rehearing, the trial court considered and rejected plaintiff's additional contention that § 337 of the Restatement entitled "Artificial Conditions Highly Dangerous to Known Trespassers" applied.

The court of appeals affirmed the summary judgment. 158 Ariz. 156, 761 P.2d 1060 (1986). We granted review to decide whether § 337 of the Restatement applies in Arizona and, if so, whether factual issues preclude summary judgment on a § 337 theory. An alternative issue is whether the evidence will support a finding of willful or wanton conduct. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3); Rule 23, Ariz.R.Civ.App.P. 17B A.R.S.

## FACTS

Because this is an appeal from a summary judgment rendered against the plaintiff, we view the facts and all inferences that may reasonably be drawn from them in the light most favorable to plaintiff. *Livingston v. Citizen's Utility, Inc.*, 107 Ariz. 62, 64, 481 P.2d 855, 857 (1971). So viewed, the facts, as shown by the depositions and affidavits, are as follows:

Joe Webster suffered severe injuries in 1984 when he rode his horse into four strands of unmarked barb wire which had been strung across a river wash by defendant Culbertson on her property line. Defendant's property is in Pima County, southwest of Tucson, in a semi-rural area consisting of desert with residences on parcels ranging from one and one-quarter to five acres in size.

Culbertson acquired the property in 1967 and decided to fence it in 1977. One of the reasons she decided to do so was to prevent people from riding dunebuggies and horses through the front part of the property. The wash is on the rear of the property, and, at deposition, she acknowledged that she assumed the same people who had been using the front portion of the property also used the wash for recreational use. In any event, the defendant constructed the fence and, except for the portion going across the wash, she used "field fence." However, where the fence crossed the wash, barb wire, instead of field fence, was used, although defendant acknowledged that a person was more likely to be injured by contact with barb wire than by contact with field fence. There were no fenceposts in the wash itself where they would have washed out. The posts on the river banks were obscured by trees and brush, and were virtually invisible to people approaching the fence from the wash. When the defendant first erected the fence she hung white cloth or aluminum foil from the barb wire at the wash crossing to warn people of the fence. However, by the time of the accident in 1984, there were no cloth strips,

1. There are two defendants. Defendant Culbertson bought the property in 1967 and is the one who erected the fence. Defendant Klug was added to the suit by plaintiff after discovery indicated she acquired a joint tenancy interest in the property in 1981. In this opinion, for convenience, the "defendant" will be referred to in the singular.

foil, tapes, or warning signs of any type on the fence.[2]

The wash was visible from Culbertson's house and she went to it approximately weekly for the purpose of dumping cat litter in the wash. Evidence from sources other than the defendant indicated that, at the time of the accident, the wash was used by pedestrians, children, motorcyclists, four-wheel drive vehicles, dunebuggies, and equestrians, and that tire tracks, footprints and hoofprints were visible in the wash. An equestrian trail crossed the wash less than fourteen yards from the spot where the wash enters defendants' property.

Plaintiff lived approximately one-half mile from the accident scene. On the evening of the accident in May, 1984, he and a riding companion entered the wash on horseback approximately one-quarter to one-half mile from the fence. He had not sought anyone's permission to enter or use the wash, and he saw no "private property" or "no trespassing" signs as he approached defendant's property. Neither he nor his riding companion had been to the scene before the accident. He approached the fence at approximately 7:30 p.m. Although it was still daylight, the sun was starting to go down. A photograph of the barb wire taken shortly after the accident confirms its virtual invisibility. He first saw the fence when he and his horse were approximately ten feet from it, but he was unable to stop his horse in time. The barb wire gouged a fist-sized chunk of muscle from his leg resulting in approximately fifty percent permanent muscle immobility in that leg.

2. There is also evidence in the record that defendant, shortly after the accident, attached three reflective "no trespassing" signs and a reflective piece of "V"-shaped rope to the fence in the wash. In the trial court, plaintiff suggested that this evidence, although of post-accident remedial measures, would be admissible to rebut an alleged claim by defendant that she had done everything possible to warn of the fence. The record contains no express ruling on this claim of admissibility and it is not an issue on appeal. We do not know whether the trial court considered the evidence of post-accident remedial measures. Accordingly, we do not consider

## ISSUES PRESENTED

1. Should Arizona adopt § 337 of the Restatement of Torts?

2. If § 337 applies, do factual issues preclude summary judgment in this case?

3. Did the trial court properly grant summary judgment on plaintiff's "willful and wanton" theory?

## ADOPTION OF § 337

In the typical "trespasser" case, plaintiff may not recover unless the landowner has been guilty of some willful or wanton disregard for the plaintiff's safety. *See Hersey v. Salt River Valley Water Users' Ass'n.*, 10 Ariz.App. 321, 458 P.2d 525 (1969), and Restatement § 333.[3] This is true because a property owner is not usually obliged to assume that others will trespass on his property. *Salt River Valley Water Users' Ass'n. v. Compton*, 39 Ariz. 491, 8 P.2d 249 (1932), overruled on other grounds in *MacNeil v. Perkins*, 84 Ariz. 74, 324 P.2d 211 (1958). In other words, a landowner need not exercise reasonable care for the safety of a trespasser when there is no reason to anticipate a trespasser's presence.

However, § 337 of the Restatement recognizes an exception to, or modification of, this general rule. It provides:

*Artificial Conditions Highly Dangerous to Known Trespassers.*

A possessor of land who maintains on the land an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact with it, is subject to liability for bodily harm caused to trespassers by his failure to

it, nor do we express any opinion on its admissibility.

3. § 329 of the Restatement defines a trespasser as "[a] person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." The parties and the lower courts have consistently treated the instant case as a trespasser case. Accordingly, we do too, although it is by no means clear to us that plaintiff either entered or remained *on defendant's land*, and he may never have attempted to enter defendant's land had it been visibly marked.

exercise reasonable care to warn them of the condition if

    (a) the possessor knows or has reason to know of their presence in dangerous proximity to the condition, and

    (b) the condition is of such a nature that he has reason to believe that the trespasser will not discover it or realize the risk involved.

■   In the absence of law to the contrary, Arizona follows the Restatement. *Jesik v. Maricopa County Community College Dist.*, 125 Ariz. 543, 546, 611 P.2d 547, 550 (1980). Arizona courts have not expressly relied on § 337 in previous cases. However, one court of appeals' decision mentioned the section and then found it was inapplicable to the facts of that particular case. *See Carlson v. Tucson Racquet & Swim Club, Inc.*, 127 Ariz. 247, 249 n. 3, 619 P.2d 756, 758 n. 3 (App.1980).

■   Section 337 is a sound and sensible rule: When a landowner knows or has reason to know that trespassers come upon his property, he cannot, without liability, maintain a dangerous artificial condition on his property when he also has reason to believe that the trespasser will not discover the dangerous condition or realize its risk. We agree with the reasoning of the New Jersey Supreme Court:

In the choice of competing considerations of societal policy, the need for protection against the reasonably foreseeable risk of death or severe personal injury outweighs the freedom of action that would otherwise characterize the relation of the possessor of land to a trespasser.

*Imre v. Riegel Paper Corp.*, 24 N.J. 438, 443, 132 A.2d 505, 510 (1957).

Since no Arizona law conflicts with § 337, and since it represents a sound and fair policy, we will follow it.

### PROPRIETY OF SUMMARY JUDGMENT ON A § 337 THEORY

■   Summary judgment is appropriate only where there is no dispute as to material facts. In a negligence case, summary judgment may only be granted where there

is no reasonable inference which can be drawn from the facts to establish a prima facie case of negligence. *Livingston v. Citizen's Utility, Inc.*, 107 Ariz. 62, 64, 481 P.2d 855, 857 (1971). Litigants are entitled to a trial where there is the slightest doubt as to the facts. *Id.; Peterson v. Valley Nat'l. Bank of Phoenix*, 90 Ariz. 361, 368 P.2d 317 (1962). Further, although certain basic facts are undisputed, if factual inferences must be drawn therefrom in order to render judgment and if reasonable minds could draw different inferences, summary judgment is improper. *Livingston*, 107 Ariz. at 64, 481 P.2d at 857. On appeal where summary judgment has been granted, this court must "view the evidence in a light most favorable to the [appellant] and give [appellant] the benefit of all favorable inferences that may be reasonably drawn therefrom." *Id.*

The court of appeals, in its analysis of the facts, concluded that § 337 was factually inapplicable. The court of appeals set forth three reasons for its conclusion:

First, the lawful erection of a four-strand barbed [sic] wire fence does not charge one with knowledge that it is likely to cause death or serious bodily harm. Second, the use of barbed [sic] wire fences does not create highly dangerous artificial conditions. They exist throughout rural Arizona, in and across washes, and are commonly encountered by trespassers. Third, there is no evidence that Culbertson knew that horseback riders frequently ran their horses down the wash toward her fence.

*Webster v. Culbertson*, 158 Ariz. at 157–158, 761 P.2d at 1061–1062.

■   Taking the last point first, we must disagree with the court of appeals' analysis of the record. There is ample evidence in the record to support a jury finding that defendant Culbertson knew or had reason to know that trespassers, including equestrians, were sometimes dangerously close to the fence as required by subsection (a) of § 337.

Either of the first two statements by the court of appeals in support of its view of the non-applicability of § 337 are correct in

the abstract. However, determination of whether § 337 applies in a given case is a highly fact-intensive determination. Given the particular circumstances of this case we believe a jury could find that each factual predicate of § 337 is present in this case. Plaintiff does not rely upon the mere act of putting up a barb wire fence. Plaintiff contends that defendant erected and maintained a dangerously invisible fence with knowledge or reason to know that trespassers who would not perceive the risk would be present. We find the plaintiff's version of the evidence entirely plausible.

■ Lastly, the court of appeals concluded that § 337 was inapplicable unless the defendant had "actual knowledge" that a trespasser was about to come in contact with a highly dangerous artificial condition maintained on her property. 158 Ariz. at 158, 761 P.2d at 1062. In arriving at this conclusion, the court relied upon comment (a) to § 337 and the court of appeals' case of *Payne v. M. Greenberg Constr.*, 130 Ariz. 338, 636 P.2d 116 (App.1981).

The text of § 337 does not impose the condition of "actual knowledge" that the court of appeals imposed. Insofar as the landowner's knowledge concerning the trespasser's presence in proximity to the artificial condition, § 337 applies when the landowner "knows or has reason to know" of the presence of the trespassers. "Reason to know" is not equivalent to "actual knowledge." Section 12(1) of the Restatement defines "reason to know" as follows:

> The words "reason to know" are used throughout the restatement of this subject to denote the fact that the actor has information from which a person of reasonable intelligence or if the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists.

Comment (a) to § 337, relied upon by the court of appeals, states, in part:

> The rule stated in this Section relates only to the conditions under which a possessor of land is subject to liability to a trespasser whom he knows to be about to come in contact with a highly danger-

ous artificial condition maintained by him upon the land.

It is this language which was referred to in *Payne* and relied upon by the court of appeals in this case. Assuming, without deciding, that the comment is capable of the construction attributed to it, we nevertheless choose to follow the text of the Restatement itself. Under it, "reason to know" is a sufficient state of knowledge. We conclude that, taking the evidence in the light most favorable to the plaintiff, there are sufficient facts and inferences in the record which, if introduced at trial, would be sufficient to take the case to a jury on a § 337 theory.

The court of appeals also concluded that § 335 of the Restatement was inapplicable. However, plaintiff waived the applicability of § 335 by failing to raise the issue in his opening brief in the court of appeals. *VanLoan v. VanLoan*, 116 Ariz. 272, 569 P.2d 214 (1977). We therefore do not address the applicability of § 335.

### WILLFUL OR WANTON THEORY

■ Based upon our examination of the record in this case, we agree with the court of appeals and with the trial court that there is insufficient evidence to support a finding that the defendant was guilty of "willful or wanton" conduct as those terms are used in assessing duties toward trespassers. Accordingly, we affirm the grant of summary judgment in favor of the defendant landowner on that theory.

### CONCLUSION AND DISPOSITION

We vacate those portions of the court of appeals' opinion relating to §§ 335 and 337 of the Restatement. Except as noted above, we reverse the trial court's grants of summary judgment. We remand for further proceedings consistent with this opinion.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and HOLOHAN, JJ., concur.