967 F.2d 591
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Donnie Rayford TATE, Jr.; Chea Tate, Plaintiffs-Appellants,
v.
Harold M. COLE; First State Service Corporation, an Arizona
corporation; Sierra Vista Land and Development Company, a
joint venture; Dom Construction Company, a sole
proprietorship; Dominic Troncale, Defendants-Appellees.
Donnie Rayford TATE, Jr.; Chea Tate, Plaintiffs-Appellants,
v.
Harold M. COLE; First State Service Corporation, an Arizona
corporation; Sierra Vista Land and Development Company, a
joint venture; Dom Construction Company, a sole
proprietorship; Dominic Troncale; Pate Contractors, Inc.,
An Arizona Corporation; Herman Pate; City of Sierra Vista,
Arizona, Defendants-Appellees.
 Nos. 90-16201, 90-16350 and 91-15048.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 11, 1992.
Decided June 26, 1992.
As Amended on Denial of Rehearing Oct. 5, 1992.
 
 Before SCHROEDER, REINHARDT and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff-Appellant Donnie Tate became a paraplegic as the result of an accident which occurred while he was riding his motorcycle on the dirt stockpile known as "the Summit." The accident occurred on a hill that had, unbeknownst to Tate, been excavated since his previous visit. The excavation had left a fifteen foot vertical cliff which Tate fell over after he cycled to the top of the hill.
 
 
 3
 The Summit was owned by defendants-appellees Cole, Sierra Vista Land Company, and First State Service Corporation ("the landowners"). It consisted of mounds of dirt that had been created when the landowners developed an adjacent tract of land and stored the excess dirt on the Summit. The Summit was commonly used by dirtbikers. It was also used as a source of landfill material. The defendants-appellees Dom Construction and Dominic Troncale acting as subcontractors for Pate Contractors and Herman Pate (collectively, "Dom") were engaged in using landfill from the Summit in the course of a construction project at nearby Fort Huachuca.
 
 
 4
 Donnie Tate, Brandi Nicole Tate, Donnie Rayford Tate, Sr., and Kathy Mae Tate filed this action in district court alleging that the landowners and Dom were liable for Donnie Tate's injuries. The district court granted summary judgment to the landowners on the ground that the Summit was recreational use "premises" under A.R.S. § 33-1551, which creates immunity from tort liability for owners of such premises. The district court awarded summary judgment to Dom on the basis of the same statute and also on the basis that there was no triable issue of fact to establish that Dom was responsible for creating the cliff. In addition, the district court awarded Rule 11 sanctions against plaintiffs' attorney for pursuing frivolous claims for purposes of delay in the third amended complaint. Plaintiffs appeal from all three rulings.
 
 
 5
 Plaintiffs correctly contend that the district court should not have relied upon Arizona's Recreational Use Statute. That section defines "premises" as "agricultural, range, mining or forest lands, and any other similar lands." Arizona Revised Statute § 33-1551. Size, use, remoteness, and "naturalness" are the factors which determine whether land constitutes "premises" under the statute. See Walker v. City of Scottsdale, 163 Ariz. 206, 213, 786 P.2d 1057 (Ct.App.1989). The statute is to be construed narrowly. Bledsoe v. Goodfarb, 823 P.2d 1264, 1270 (Ariz.1991). Here while the tract is relatively large, 200 acres, it is adjacent to a residential development, and its principal recreational use by motorcyclists is due to the wholly artificial creation of the dirt mounds. It is not the type of remote, natural premises used for recreational purposes that is envisioned by the Arizona statute.
 
 
 6
 That determination does not dispose of the appeal, for we must affirm if there is any basis in the record on which to support the district court's ruling. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990). The landowners contend that Donnie Tate is a trespasser or a licensee to whom under Arizona law the landowners owed a duty at most to warn of hidden dangers which the landowners had reason to know were on the premises. See Webster v. Culbertson, 158 Ariz. 159, 161, 761 P.2d 1063, 1065-66 (1988) (trespasser); Shannon v. Butler Homes, Inc., 102 Ariz. 312, 316, 428 P.2d 990, 994 (1967) (invitee). In this case, the landowners had no reason to know of the existence of this cliff, since it had only just been formed. There is no evidence in the record of other, similar conditions which should have put the owners on notice of the probable existence of such dangers. If an unreasonably dangerous condition was negligently created in this case, the negligence was on the part of whatever excavator hauled the dirt away. Furthermore, the condition was not hidden or concealed, a necessary element if landowner liability is to attach.[1] Accordingly, summary judgment was properly granted in favor of the landowners.
 
 
 7
 We turn next to the liability of Dom. Because we have concluded that the Summit was not "premises" within the meaning of the Recreational Use Statute, the question is whether there was a genuine issue of fact as to whether Dom was responsible for the cliff. We conclude that there is such an issue.
 
 
 8
 There is considerable evidence from which to infer that Dom moved dirt from the Summit on April 12. Dominic Troncale stated in his deposition that Dom obtained all soil for the Fort construction project at the Summit. In order to bring in dirt for the Fort project, the contractor had to submit soil samples for testing and the only sample Dom submitted came from the Summit. The contractor's own log stated that Dom had made a delivery "on site" that day.
 
 
 9
 Dom's brief argues that the notation "on site" meant that the dirt came from one part of the Fort to another. Troncale stated in his deposition that Dom stopped excavation at the Summit on March 22. However, Steven Thompson, Director of the Department of Engineering and Housing at Fort Huachuca, stated that it would be unusual for dirt to be stored on one part of the Fort and then moved to another and that he would normally have given his permission for such a thing. He apparently gave no such permission to Dom. Thompson's testimony is bolstered by Jim Glaze, a retired safety engineer with construction experience, who stated it would be inefficient to stockpile dirt in one area and then move it to another area.
 
 
 10
 In light of these contradictions, we must conclude that there were genuine issues of material fact in this record, and that the district court should not have granted summary judgment in favor of Dom. The circumstantial evidence adduced by the plaintiff was sufficient for one to infer that Dom was responsible for the dirt removal that led to the creation of the cliff. There is no evidence of any other contractor or dirt remover having been at the site.
 
 
 11
 We turn finally to the matter of sanctions. The record of what was before the district court with respect to sanction motions is not entirely clear. The district court awarded sanctions on the basis that the claims in the Third Amended Complaint were frivolous and pursued from a desire to needlessly delay the case. It appears that at least some of the invited motions for sanctions were based upon an allegedly frivolous claim for loss of consortium which was contained only in the Second Amended Complaint. This court has concluded that there exists a triable issue of fact with respect to the claims against Dom and concludes further that the claims against the landowners cannot be considered frivolous. There is no indication that any of the claims were made in bad faith. We conclude that the district court abused its discretion in awarding sanctions against the plaintiffs' attorney. See Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir.1990) (en banc).
 
 
 12
 The judgment in favor of the landowners in appeal No. 90-16201 is AFFIRMED. The judgment in favor of Dom Construction and Dominic Troncale is REVERSED and the matter REMANDED FOR FURTHER PROCEEDINGS. The order of sanctions in appeal Nos. 90-16350 and 91-15048 are to be VACATED.
 
 
 13
 REINHARDT, Circuit Judge, concurring in part and dissenting in part:
 
 
 14
 I agree with most of what my colleagues have said in this case. I agree with the majority that the district court improperly granted summary judgment to the landowners and Dom on the basis of Arizona's Recreational Use Statute and concur in its analysis of that statute and its application in the present case. I agree with the grant of summary judgment to Dom should be reversed because there is a genuine issue of material fact regarding Dom's responsibility for the cliff that caused Tate's injuries. I also concur that the district court abused its discretion by awarding sanctions against the plaintiffs' attorneys. My sole disagreement is with the conclusion that the district court's result was right with respect to the landownders even though its reasoning was wrong. I believe that the decision to grant summary judgment in favor of the landowners was in error in all respects.
 
 
 15
 The landowners knew that a huge dirt pile was located on their property. They knew that a variety of individuals were removing portions of that mound of dirt and explicitly authorized at least some of them to do so. The landowners did not supervise the removal of the dirt, require the parties that removed it to follow any procedures or rules with respect to their actions, or examine the condition of the mound after the removal of large quantities of dirt. Moreover, there is at least a genuine issue of material fact regarding whether the landowners knew or should have known that the mound was used by recreational dirtbikers. The plaintiffs presented evidence that Gerald Logue, the site manager at the Summit, knew about recreational vehicle use on the mound. They also presented evidence that use of the mound by dirtbikers was "common knowledge". In addition, the presented evidence that the dirtpile was crisscrossed by numerous identifiable paths created by the dirtbikes and that several complaints had been made the the city of Sierra Vista by neighboring residents concerning the bikers' use of the dirt pile. The majority believes that, as a matter of law, Arizona does not recognize liability of the landowners in such circumstances. I am convinced that it is mistaken.
 
 
 16
 The majority's one-paragraph explanation of its ruling regarding the landowners' liability cites only two cases in support of its holding: Webster v. Culbertson, 158 Ariz. 159, 761P.2d 1063, 1065 (1988), and Shannon v. Butler Homes, Inc., 102 Ariz. 312, 316, 428 P.2d 990, 994 (1967). See Disposition at 3-4. My colleagues contend that these cases stand for the proposition that because Donnie Tate was a trespasser or licensee, that landowners' sole duty was "to warn of hidden dangers which the landowners had reason to know were on the premises." Id. at 3. The majority finds summary judgment to be appropriate because it believes that the landowners did not have actual knowledge or "reason to know" of the presence of the cliff.[1] I believe, for two reasons, that my colleagues are in error. First, I believe that there is a genuine issue of material fact concerning whether the landowners had "reason to know" about the cliff on their property and hence are subject to liability even under the "general rule" cited by my colleagues. Second, I believe that the majority ignores alternate bases for liability that expand the duties of landowners beyond the general rule it relies upon.
 
 
 17
 I believe that under Arizona law the Tates have clearly established a genuine issue of material fact regarding whether the landowners "knew or should have known" about the dangerous cliff[2] -- by virtue of their failure to inspect the mound after large quantities of dirt were removed; their decision to impose no standards on, or procedures to be followed by, the parties who removed the dirt from the mound; and by virtue of the fact that they should have concluded that the unsupervised, uninspected and standardless removal of large amounts of dirt from the pile was likely to result in the creation of a physical hazard. In reviewing a motion for summary judgment, all reasonable inferences must be drawn in the light most favorable to the non-moving party. See T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630-32 (9th Cir. 1987). To defeat such a motion, plaintiffs need only present evidence from which a jury might return a verdict in their favor. See id. That rule is especially important in cases of the type before us because under Arizona law a determination of whether a landowner "should have known" of a particular danter "is a highly fact-intensive determination." Webster, 761 P.2d at 1067.
 
 
 18
 Given the facts before us, the district court's grant of summary judgment was improper. The landowners knew that contractors were removing large quantities of dirt from the mound. Without the creation of any standards for that removal, it was reasonable to expect that the contractors would remove the dirt in the cheapest or easiest way possible -- including removing large amounts of dirt from the most accessible section of the pile, thereby creating an inherently dangerous cliff. Without supervision by the landowners, it was reasonable to expect that such a cliff would go unnoticed and unrestored. The fact that the landowners had no reason to know that the particular cliff that injured Donnie Tate had been created is irrelevant: the information that they had was sufficient to put them on notice that there was a likelihood that one or more cliffs would be created, and to impose on them a duty both to prevent and warn of the probable existence of such cliffs -- duties that they failed completely to perform. See Restatement (Second) of Torts § 334 cmt. c (1965) ("The words 'should know' as used in the Restatement of this Subject imply that the person in question is not only required to draw a correct conclusion from the facts known to him, but also to ascertain the data necessary for drawing such a conclusion by a reasonable attention to and appreciation of the surrounding circumstance and where adequate date cannot be thus obtained, by inspection or investigation.")[3]
 
 
 19
 The present case is quite similar in relevant respects to an illustration in the Restatement of a "classical" case of landowner liability. 5iSeeRestatement (Second) of Torts § 335 cmt. d (1965). That illustration depicts a landowner who knows that individuals habitually trespass on his land in an area close to an unfenced powerhouse -- just as here the landowners knew (or should have known) that dirtbikers habitually use the dirtpile. The landowner in the illustration nevertheless permits a concealed five-foot-high electric wire to become uninsulated -- just as here the landowners permitted a concealed cliff to be created in the mound. In the illustration, if a trespasser comes into contact with the electric wire and is injured, the rule is clear: "A [the landowner] is subject to liability". Id. I believe that the rule is the same here. the majority acknowledges that "there is not question that the conduct of the excavator who created this particular condition was negligent and created an unreasonably dangerous condition." The landowners cannot escape responsibility for permitting this to occur merely by saying: we closed our eyes to what was occurring.
 
 
 20
 Moreover, the majority's holding that the sole duty of a landowner is to warn of hidden dangers which the landowners had reason to know were on the property is based on a misreading of Webster and Shannon. the majority's reading of those cases is far too constricted. It finds limitations where none exist. In fact, both cases noted only that the described duty existed and that a violation of that duty was sufficient to justify imposition of liability -- not that it was the exclusive duty of a landowner or the sole basis for liability. See Webster, 761 P.2d at 1065 (noting that § 337 of the Restatement is "an exception to, or modification of, this general rule"); Shannon, 428 P.2d at 994; see also Webster, 761 P.2d at 1067 (failing to reach the issue of the landowners' duties under § 335 of the Restatement because it was not raised in appellant's opening brief); id. at 1065 (citing Restatement (Second) of Torts § 333 (1965) (entitled "General Rule" and establishing rule "except as stated in §§ 334-339")) Webster and Shannon therefore do not stand for the proposition relied upon by the majority, nor do they provide support for the finding that the landowners are immune from liability under Arizona law.[4] In fact, in both Webster and Shannon, the court reversed lower court's grants of summary judgment to the defendant. See Webster, 761 P.2d at 1067; Shannon, 428 P.2d at 996.[5]
 
 
 21
 I believe that there are several bases on which liability might be found under Arizona law. I will allude to them briefly.
 
 
 22
 First, the landowners might be liable under § 337 of the Restatement. Section 337 states that:
 
 
 23
 "A possessor of land who maintains on the land an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact with it, is subject to liability for bodily harm caused to trespassers by his failure to exercise reasonable care to warn them of the condition if
 
 
 24
 (a) the possessor knows or has reason to know of their presence in dangerous proximity to the condition, and
 
 
 25
 (b) the condition is of such a nature that he has reason to believe that the trespasser will not discover it or realize the risk involved."
 
 
 26
 Arizona explicitly follows that section of the Restatement. See Webster, 761 P.2d at 1066. The principal question is whether the landowners "maintained" the cliff on their land. I believe that a strong argument can be made that they did. Section 335 of the Restatement also may provide a basis for liability. Although Arizona does not appear to have explicitly adopted the section, "[i]n the absence of law to the contrary, Arizona follows the Restatement." Webster, 761 P.2d at 1066; see Jesik v. Maricopa County Community College District, 125 Ariz. 543, 546, 611 P.2d 547, 550 (1980); MacNeil v. Perkins, 324 P.2d 211, 215 (1958). It states that
 
 
 27
 "A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited areas of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land if (a) the condition (i) is one which the possessor has created or maintained and (ii) is, to his knowledge, likely to cause death or seriously [sic] bodily harm to such trespassers and (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and (b) the possessor has failed to warn such trespassers of the condition and the risk involved."
 
 
 28
 Here again, the principal question is whether the landowners "maintained" the cliff on their property. Again, I believe it is reasonable to conclude that they did.
 
 
 29
 Finally, Section 341 of the Restatement may impose a basis for finding liability. Tate may have been a licensee and not merely a trespasser. There is a genuine issue of material fact concerning whether the landowners' knowledge of and tacit consent to the continued use of the mound by dirtbikers made Tate a licensee. See Disposition at 3 (noting that Tate may be a licensee). Section 341 describes the duties owed to licensees by landowners and is followed by Arizona. See, e.g. supra at 6 (noting general rule); Harris v. Buckeye Irr. Co., 642 P.2d 885, 887-889 (Ariz.App. 1982) (applying § 341). Section 341 states that:
 
 
 30
 "A possessor of land is subject to liability to his licensees for physical harm caused to them by his failure to carry on his activities with reasonable care for their safety if, but only if, (a) he should expect that they will not discover or realize the danger, and (b) they do not know or have reason to know of the possessor's activities or the risk involved."
 
 
 31
 If Tate is held to be a licensee, he might well be entitled, after trial, to relief under Section 341.
 
 
 32
 I do not think that it is by any means clear that none of the above-mentioned additional bases for liability is applicable in the present case, nor does the majority identify any reason for not applying these alternate grounds. They all present circumstances precluding the issuance of summary judgment. In view of the fact that the majority is in error in concluding that the "general rule" precludes relief here and in view of the existence under Arizona law of other bases for relief, I would reverse the grant of summary judgment to the landowners and remand the claims against them for further proceedings.[6]
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The dissent argues that the landowners had reason to know of the possibility of the creation of dangerous conditions on the dirt stockpile. Landowner liability, however, also requires finding that the cliff was a hidden or concealed condition. See Restatement (2d) Torts §§ 335, 337, 341. A fifteen-foot cliff does not constitute a hidden or concealed condition
 
 
 [1]
 The majority also suggests that liability cannot be imposed because the cliff was not "hidden or concealed". See id. at 4 & n.1. An artificial condition need not be "hidden" or "concealed" in order to impose liability on the landowners: all that is required is that there be "reason to believe that [Tate] will not discover it or realize the risk involved". Restatemtnt (Second) Torts § 337 (1965); see also id. § 335 (same); id. § 341 (same; Webster, 761 P.2d at 1064-65 (reversing summary judgment in favor of a landowner who placed a barbed wire fence across an open wash that subsequently injured an individual "who saw the fence when he and his horse were approximately ten feet from it but . . . was unable to stop his horse in time"). Tate and numerous other dirtbikers regularly traversed the mounds over identifiable paths at great speed: it is eminently reasonable to believe that, especially given the numerous hills on the mound over which visibility was exceedingly limited, they would not -- as Tate did not -- discover a newly-created cliff as they approached it from the backside until it was too late to avoid serious bodily injury
 
 
 [2]
 The fact that the contractor, and not the landowner, created he cliff, see Disposition at 4, is irrelevant: liability is imposed on the landowner regardless of who actually was responsible for the formation of the dangerous condition on the land
 
 
 [3]
 Under Arizona law, plaintiffs need not demonstrate that "similar conditions", Disposition at 4, had previously been formed on the land in order to establish that the landowners had "reason to know" that the standardless and unsupervised removal of large quantities of dirt might create a hazardous condition on their land. moreover, the Tates did present evidence -- in particular, the deposition of Officer Burns -- that previous excavation had created cliffs and "sudden drop off[s]" in the mound
 
 
 [4]
 Moreover, Webster dealt only with the issue of duties owed to a trespasser, see Webster, 761 P.2d at 1065 n.3, while the majority admits that Tate may have been a licensee (to whom the landowners would have owed a higher duty of care). See Disposition at 3; see also infra at 7-8 (discussing licensee liability). Accordingly, Webster could not be determinative of the present case
 
 
 [5]
 Given that result, the courts found no reason to elaborate on possible additional bases of liability. No language can be found in either case to preclude liability in situations not precisely analogous to either Webster or Shannon
 
 
 [6]
 The dissent was inadvertently omitted when the disposition was issued. Because the majority and dissenting opinions are now being reissued following the filing of petitions for rehearing, I note that the appellants call our attention to the recent opinion of Newman v. Sun Valley Crushing Co., CA-CV 90-0649 (Ariz. Ct. App. July 2, 1992), which strongly supports the views expressed herein