659 So.2d 482 (1995)
Joseph Daniel DYALS, Jr., as personal representative of the estate of Joseph Daniel Dyals, III, Joseph Daniel Dyals, jr., Personally and Judy May Dyals, Personally, Appellants,
v.
Raymond HODGES, Sr., Appellee.
No. 94-3388.
District Court of Appeal of Florida, First District.
August 28, 1995.
*483 Terence M. Brown of Brown & Christopher, Starke, for appellants.
Charles B. Carter, Gainesville, for appellee.
ERVIN, Judge.
This is an appeal from a final summary judgment in favor of appellee, Raymond Hodges, entered in a wrongful death action based on a theory of premises liability. Because we conclude that the trial court erred in deciding that the dangerous condition on Hodges' property was open and obvious and that he had no duty to warn the decedent trespasser[1] of the alleged defective condition, we reverse the judgment entered and remand for further proceedings.
The event giving rise to appellants' cause of action occurred on the evening of March 29, 1991, while the decedent, Joseph Dyals, III, was a passenger in a car traveling west on County Road 346A in Dixie County, Florida. The automobile failed to stop before a stop sign, continued westbound through a three-corner intersection across County Road 349 and onto Hodges' property, where it crashed through a fence and struck a large pile of brush and tree stumps located immediately behind the fence. As a result of the collision with the pile, Dyals was seriously injured and died four days thereafter. In Count II of the amended complaint, the plaintiffs alleged that Hodges intentionally placed the pile of stumps and debris to act as a barrier to any vehicles that might damage the fence, that the heap was not open to ordinary observation, and that Hodges thereby breached his duty of care by engaging in wanton negligence or willful misconduct which exposed the decedent to a known danger.
At the hearing on the motion for summary judgment, Hodges submitted an affidavit stating that about six months before the *484 accident, the fence bordering his property had been knocked down and some of his cows escaped. His stated reason for placing the stumps in the corner of his property was "to deter the cows from escaping should the fence be knocked down again." He indicated that the stumps were open and obvious. In his deposition, he testified that although there had been approximately four or five previous accidents at the same site, it did not occur to him that the stumps could pose a danger to motor vehicles that might conceivably run through the intersection.
Affidavits from some of Hodges' neighbors, however, raised questions of material fact concerning Hodges' motivation in placing the stumps at that particular site. B.R. Faircloth stated that he asked Hodges whether he could take the piled stumps to his hunt club, and Hodges responded, "No; I'm tired of people running through my fence and the next one that does I want to look at them." Karl Hensel related that cars would sometimes crash through Hodges' fence and his cows would break loose, which aggravated Hodges, because the drivers would not inform him of such facts.
In Florida, a landowner is under a duty to a trespasser to avoid willful and wanton harm to such person, and upon discovery of the person's presence to warn him or her of known dangers not open to ordinary observation. Wood v. Camp, 284 So.2d 691, 693-94 (Fla. 1973). The American Law Institute uses the phrase, "conduct in reckless disregard of the safety of others," rather than the ambiguous terms, "wanton" or "willful," to describe landowner's misconduct. Restatement (Second) of Torts § 336 cmt. e, Special Note (1965) [hereinafter Restatement]. The Restatement defines conduct in reckless disregard of others in the following language:
The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.
Id. at § 500. In discussing two types of reckless conduct, the commentators continue: "In one the actor knows, or has reason to know ... of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act ... in conscious disregard of, or indifference to, that risk." Id. at cmt. a.
The particular type of reckless conduct applicable to the facts at bar appears to be most appropriately described in section 337 of the Restatement, relating to artificial conditions highly dangerous to known trespassers. Section 337 provides:
A possessor of land who maintains on the land an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact with it, is subject to liability for bodily harm caused to trespassers by his failure to exercise reasonable care to warn them of the condition if
(a) the possessor knows or has reason to know of their presence in dangerous proximity to the condition, and
(b) the condition is of such a nature that he has reason to believe that the trespasser will not discover it or realize the risk involved.
The Supreme Court of Arizona specifically applied section 337 of the Restatement in Webster v. Culbertson, 158 Ariz. 159, 761 P.2d 1063 (1988) (en banc), in setting aside a summary judgment in favor of a landowner. In Culbertson, a trespassing horseback rider was seriously injured when he rode his horse into an unmarked barb wire fence which the defendant had strung across a river wash on her property line, at a location where the evidence showed that uninvited persons had frequently traversed. The accident occurred at approximately 7:30 p.m., a time when the visibility of the hazard was limited. The plaintiff testified that because he was approximately ten feet from the fence when he first saw it, he was unable to stop his horse before colliding with it. In applying section 337 to the facts, the Arizona Supreme Court stated:

*485 Section 337 is a sound and sensible rule: When a landowner knows or has reason to know that trespassers come upon his property, he cannot, without liability, maintain a dangerous artificial condition on his property when he also has reason to believe that the trespasser will not discover the dangerous condition or realize its risk.
Id., 761 P.2d at 1066.
In answer to the Arizona Court of Appeals' conclusion that maintenance of a four-strand barb wire fence did not create a highly dangerous artificial condition, the supreme court noted that the plaintiff did not rely on the defendant's mere erection of the fence, but also on evidence showing that the defendant maintained the nearly invisible fence with knowledge or reason to know that trespassers, who had not perceived the risk, would be present. Id., 761 P.2d at 1067.
A similar result was reached in Krivijanski v. Union Railroad, 357 Pa.Super. 196, 515 A.2d 933 (1986), in which a wrongful death action for damages was brought against the defendant railroad on facts showing that the plaintiffs' decedents were involved in a fatal accident while riding motorcycles on a private unpaved road, an area uninvited persons frequently traveled. The motorcyclists' injuries resulted from a collision with an unmarked wire cable that the railroad had maintained across the road. In upholding an award of damages against the defendant, the Pennsylvania Superior Court, quoting from section 500 of the Restatement, decided that the evidence was sufficient for a jury to conclude that the railroad had created an unreasonable risk of physical harm to others, and, therefore, could be found liable for damages under a theory of reckless disregard of the safety of others.
We find nothing in Florida case law inconsistent with the rules stated in sections 337 and 500 of the Restatement. Indeed, Florida decisional law, in our opinion, defining willful and wanton misconduct as applied to punitive damages, is altogether consistent with the Restatement's definition of conduct which is in reckless disregard of the rights of others. For example, in Rupp v. Bryant, 417 So.2d 658, 670 (Fla. 1982), our supreme court, in determining whether the plaintiffs had successfully pleaded an action for wanton and willful negligence against certain employees of the Duval County School Board, commented that such action "must be established by facts evincing a reckless disregard of human life or rights which is equivalent to an intentional act or a conscious indifference to the consequences of an act." Later, in more fully discussing the character of evidence necessary to sustain punitive damages, the court approved and reaffirmed certain language it had made earlier in Carraway v. Revell, 116 So.2d 16, 20 n. 12 (Fla. 1959):
"The character of negligence necessary to sustain an award of punitive damages must be of a `gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.'"
White Constr. Co. v. Dupont, 455 So.2d 1026, 1029 (Fla. 1984).
We are therefore of the view that the terms wanton and willful misconduct, under Florida case law, encompass the standard described in section 500 of the Restatement pertaining to conduct in reckless disregard of the safety of others; consequently, we approve this standard in determining that the defendant's acts can, under the circumstances, be considered willful and wanton.
In applying section 500 to the facts at bar, we find that Hodges testified that there had been approximately four or five previous accidents at the site where the decedent suffered his fatal injuries. Although Hodges said that his purpose in piling the tree stumps in the corner of the property behind his fence was to bolster the fence to deter his cows from escaping and that it was not done with any intent to disable trespassing vehicles, this statement can hardly be considered as creating an absence of a genuine material fact. It is obvious from the record that *486 Hodges had reason to know that motorists had previously trespassed onto his property in close proximity to the highly dangerous condition which he had intentionally created and maintained. In our judgment, it remained a question for the trier of fact to determine whether the defendant's act was motivated by a malicious desire for vengeance as a result of prior acts of destruction to his fence, or whether it was carried out in an attempt to keep his cattle from escaping through his damaged fence. Thus, even if we accept Hodges' statements at face value, it is clear that he reasonably anticipated, based upon his prior experience, future acts of destruction to the fence, which led to his decision to build a barricade at that particular site. We therefore think it impossible to conclude from this record that no genuine issue of material fact remains regarding whether Hodges acted in reckless disregard of the safety of others, regardless of his intention.
Moreover, application of section 337 of the Restatement to the case at hand is warranted.[2] The question of whether the appearance of the hazard was open and obvious to motorists at night was a fact subject to different inferences, which similarly was not resolvable by summary judgment. Joseph Dyals, Jr., recited in his affidavit that the visibility of the stumps from the intersection was not clear due to the growth of the brush. See, e.g., Ridgewood Groves, Inc. v. Dowell, 189 So.2d 188, 191 (Fla. 2d DCA), cert. dismissed, 194 So.2d 622 (Fla. 1966) (because of the manner in which the landowner built the pile, "a 15 foot high pile of roots, sand, grass and palmetto fronds with perpendicular or sheer sides and overhangs could constitute a hidden defect to trap the unwary."). Dyals' affidavit continued that "visibility of the aforementioned stumps is reduced down to zero during the hours of darkness." See, e.g., Brien v. Department of Transp., 538 So.2d 526, 527 (Fla. 4th DCA 1989) ("While the condition of the roadway might be determined to be readily apparent in the daylight, an issue exists as to whether it was apparent at nighttime when this incident took place.").
Additionally, we find no requirement in Florida law that the landowner have actual knowledge of the trespasser's presence on the land before the occurrence of the injury. Id. ("Lack of actual knowledge of trespassers on the roadway does not necessarily absolve the [landowner's] duty to warn."). The owner or possessor of land may be subjected to liability if he or she "knows or has reason to know of [the trespasser's] presence in dangerous proximity to the condition." Restatement § 337(a). Accord Webster v. Culbertson, 158 Ariz. 159, 761 P.2d 1063, 1066 (1988) (en banc).
We are aware that, when confronted with facts showing that a landowner should have known of continued previous presence of trespassers, the Second and Third District Courts of Appeal elevate the trespasser's status to that of an uninvited licensee. Marks v. Delcastillo, 386 So.2d 1259 (Fla. 3d DCA 1980), review denied, 397 So.2d 778 (Fla. 1981); Savignac v. Department of Transp., 406 So.2d 1143 (Fla. 2d DCA 1981), review denied, 413 So.2d 875 (Fla. 1982); Libby v. West Coast Rock Co., 308 So.2d 602 (Fla. 2d DCA), cert. denied, 325 So.2d 6 (Fla. 1975). We do not take that approach, however, deciding instead that a landowner's duty of care owed to known or discovered trespassers applies in circumstances showing either constructive or actual knowledge.
In conclusion, we consider that when facts are presented, as here, that a defendant has placed a highly dangerous condition on his land in close proximity to an area where he knows or has reason to know that persons may come into contact with it, and that the condition is one which may not be open to ordinary observation, particularly during the nighttime, the defendant may be held liable for injuries caused thereby.
REVERSED and REMANDED.
*487 BENTON, J., concurs.
MINER, J., concurs in result.
NOTES
[1] In entering summary judgment, the lower court described the decedent's status as that of an "uninvited licensee," not that of a trespasser. Our disposition of this case is based upon the law applicable to the duty of care owed to trespassers. Although we are aware that the supreme court noted in Wood v. Camp, 284 So.2d 691, 695 (Fla. 1973), that there is a narrow distinction between the categories of uninvited licensees and trespassers, we think any such distinction is unnecessary, based upon the facts at bar. As we observed in Florida East Coast Ry. v. Pickard, 573 So.2d 850, 855 (Fla. 1st DCA 1990), review denied, 589 So.2d 292 (Fla. 1991), in cases where the alleged negligence relates to a condition of the premises, a landowner owes the same duty to a trespasser or uninvited licensee: to avoid willful and wanton injury to such person and, if the person's presence is discovered, to give him or her warning of any known dangerous condition not open to ordinary observation.
[2] Although we consider the pile of stumps to be an artificial condition, the comment to section 337 provides that the rule "may reasonably be expected to apply to natural conditions on the land." Restatement, § 337 cmt. b.